# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDRES VASQUEZ, ) | |
|           Petitioner, ) | |
| ) | |
| v.  ) | Case No. CIV-05-689-HE |
| ) | |
| JOSEPH SCIBANA, ) | |
| ) | |
|           Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner appearing *pro se*, brings this action for habeas relief pursuant to 28 U.S.C. § 2241. Petitioner has filed a Petition for Writ of Habeas Corpus [Doc. #1] and Memorandum Brief [Doc. #2] (Petitioner's Brief). Petitioner challenges the method used by the Bureau of Prisons (BOP) to compute the good conduct time credited toward service of his sentence. *See* 18 U.S.C. § 3624(b)(1). The petition has been promptly examined. *See* Rule 4, Rules Governing Section 2254 Cases[1] and 28 U.S.C. § 2243.[2]

---

[1] Rule 1(b) of the Rules Governing 2254 Cases in the United States District Courts provides that the Rules may be applied to other habeas petitions.

[2] When presented with an application for writ of habeas corpus, the court should award the writ or order a response "unless it appears from the application that the applicant . . . is not entitled thereto." 28 U.S.C. § 2243. The Tenth Circuit Court of Appeals has interpreted this provision to permit dismissal of a habeas petition when the court can determine from the application that the individual is not entitled to habeas relief. *See Thompson v. True*, No. 97-3275, 1998 WL 536383 at * 1 (10th Cir. Aug. 18, 1998) (this unpublished opinion is cited for its persuasive value pursuant to Tenth Circuit Rule 36.3). Faced in other cases with the identical issue raised by Petitioner, this Court has concluded that BOP's interpretation of 18 U.S.C. § 3624(b)(1) is a reasonable interpretation of an ambiguous statute. *See e.g.* Order Adopting Report and Recommendation [Doc. #11], *Ford v. Peterson*, Case No. 04-1632-HE (W.D. OK Jan. 12, 2005); Order Adopting Report and Recommendation [Doc. #16], *Secondi v. Peterson*, Case No. 04-1090-HE (W.D. OK Apr. 13, 2005).

Because Petitioner cannot prevail on the strictly legal issues he has raised, it is recommended that the Petition be dismissed upon filing pursuant to Rule 4, Rules Governing Section 2254 Cases.

## **Background**

Petitioner is currently confined in the Federal Correctional Institution in El Reno, Oklahoma. Petition at 1. He is serving a 240-month sentence of imprisonment following his conviction in federal court for Possession with Intent to Distribute Cocaine and Conspiracy to Possess with Intent to Distribute Cocaine. Petition at 2. In this habeas action, Petitioner challenges the method used by the Bureau of Prisons (BOP) to compute the good conduct time credited toward service of his sentence. Petitioner claims that under a proper construction of the governing statute, 18 U.S.C. § 3624, a federal inmate may receive credit for up to fifty-four days of good conduct time for each year of the sentence imposed by the court. The BOP, however, prorates the fifty-four days of credit and awards credit toward service of the inmate's sentence based on the number of days actually served by an inmate with satisfactory behavior.

Using the BOP's method of computation, Petitioner states that he will earn only 940 days of good conduct time credit as opposed to the 1080 days which he would earn under his construction of the statute.

**Analysis of the Merits of Petitioner's Claim**

Congress has provided that federal inmates may receive credit toward service of their sentences for time during which their behavior is satisfactory to prison authorities. Pertinent sections of the statute providing for such credit are set out below:

> **§ 3624.  Release of a prisoner**
>
> **(a)  Date of release.--**A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b). . . .
>
> **(b)  Credit toward service of sentence for satisfactory behavior.--**
>
> > **(1)** . . . , *a prisoner* who is serving a term of imprisonment of more than 1 year [FN1] other than a term of imprisonment for the duration of the prisoner's life, *may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term*, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [C]redit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

18 U.S.C. § 3624(a) and (b)(1) (2000) (footnote omitted) (emphasis added).

The dispute in this case centers on the meaning of the phrase "term of imprisonment" in the italicized portion of subsection (b)(1) above. Petitioner contends that the phrase has the same meaning throughout the statute – "sentence imposed" – and that the statute therefore requires that up to fifty-four days of good conduct credits be awarded for each year of the sentence imposed by the court.

Petitioner states,

> Contrary to the statute's use of the term "term of imprisonment" as the operative time, in Program Statement 5880.28, the BOP has established a procedure whereby a prisoner's good time credit is not awarded on the basis of the length of sentence imposed, but rather on the number of days actually "served."

Petitioner's Brief at 2. In fact, the implementing regulation promulgated by the BOP provides in relevant part:

> Pursuant to 18 U.S.C. § 3624(b), . . . an inmate earns 54 days credit toward service of sentence (good conduct time credit) *for each year served. This amount is prorated when the time served by the inmate for the sentence during the year is less than a full year.*

28 C.F.R. § 523.20 (emphasis added). The consequence of this interpretation is that, subject to disciplinary disallowance, the BOP prorates the fifty-four days of credit a year earned by an inmate to .148 day of credit for every day actually served (54/365 = 0.148).[3] Under the BOP's method of computation, an inmate sentenced to one year and one day of imprisonment, for example, could be released after serving 319 days in prison with satisfactory behavior, receiving credit for up to forty-seven days of good conduct time (319 x .148 = 47.212), which when added to time served makes up the full 366 days of the sentence imposed (319 + 47 = 366). *See id*. at 1-45 to 1-47. The reasoning of the BOP is expressed in Program Statement 5880.28 which explains the computation of credits.

> Because a prisoner would accrue GCT [good conduct time] while serving a sentence of 1 year and 1 day and, therefore, serve something less than the full

---

[3]The Court takes judicial notice of the BOP Sentence Computation Manual, Program Statement 5880.28.

4

>sentence, it would be impossible to accrue the full 54 days of GCT for a sentence of 1 year and 1 day.

*Id.* In further explanation of the BOP's method, Program Statement 5880.28 states:

>It is essential to learn that GCT *is not* awarded on the basis of the length of the sentence imposed, but rather on the number of days actually served. In other words, when the GCT awarded plus the number of days actually served equals the days remaining on the sentence, then the prisoner shall be released on the date arrived at in the computation process.

*Id*. at 1-48 (emphasis in original).

The first step in reviewing an agency's interpretation of statutory language is to determine whether Congressional intent is clear. If Congress has spoken on the issue in such a manner that Congressional intent is clear, the inquiry ends, and both courts and the agency "must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

According to Petitioner, the BOP's computation method is contrary to the plain meaning of § 3624(b)(1), which "clearly states that prisoners may receive 54 days good time credit for every year of their 'term of imprisonment.'" Petitioner's Brief at 3. Additionally, Petitioner claims that his construction of the statute is supported by the legislative history of the 1994 and 1995 amendments to a crime bill. *Id*. at 7-8. He claims that the legislative history shows that it was the intent of Congress to require each federal prisoner to serve 85% of the sentence imposed. *Id*. at 8, (*citing* 141 Cong. Rec. S2348-01, 1995 WL 50344 (Feb. 9,

1995) and 140 Cong. Rec. S12314-01, 1994 WL 456695 (Aug. 23, 1994)). Petitioner contends that, contrary to the intent of Congress, the result of the BOP's calculation method is that "No federal prisoner, no matter how virtuous, ever serves less than 87.2% of the sentence imposed." Petitioner's Brief at 8. Alternatively, Petitioner claims that if the language "term of imprisonment" in § 3624(b)(1) is ambiguous, the "rule of lenity" must be applied in such a way as to allow reduction of a sentence by the maximum number of good conduct credits possible. *Id*. at 9-14.

The First, Third, Fourth, Fifth, Seventh and Ninth Circuits, as well as the majority of district courts that have addressed the issue, have determined that the use of the phrase "term of imprisonment" in the portion of §3624(b)(1) describing the award of credits is ambiguous and that the BOP's interpretation as stated in the implementing regulation is reasonable. *See Perez-Olivo v. Chavez*, 394 F.3d 45 (1st Cir. 2005) (BOP's calculation of good conduct credit based on time served is a reasonable interpretation of ambiguous language); *O'Donald v. Johns*, 402 F.3d 172 (3d Cir. 2005) (same); *Yi v. Federal Bureau of Prisons*, ___ F.3d ___, 2005 WL 1413897 (4th Cir. June 17, 2005) (same); *Sample v. Morrison*, 406 F.3d 310 (5th Cir. 2005) (same); *White v. Scibana*, 390 F.3d 997 (7th Cir. 2004) (same); *Pacheco-Camacho v. Hood*, 272 F.3d 1266 (9th Cir. 2001) (same); *Pasciuti v. Drew*, No. 9:04-CV-043, 2004 WL 1247813 (N.D.N.Y. June 2, 2004); *Martinez v. Wendt*, No. 3:03-CV-0826-L, 2003 WL 22456808 (N.D. Tex. Oct. 24, 2003), recommendation adopted in 2003 WL 22724755

(Nov. 18, 2003); *Graves v. Bledsoe*, 334 F. Supp.2d 906 (W.D. Va. 2004).[4] *But see Williams v. Dewalt*, 351 F. Supp.2d 412, (D. Md. 2004) (phrase "term of imprisonment" unambiguously refers to sentence imposed, not actual time served). All but one of the above-cited cases reject Petitioner's proposition that § 3624(b)(1) clearly requires application of good conduct credits based on the sentence imposed, rather than on time served.

Petitioner asserts, however, that the phrase "term of imprisonment" in § 3624(b) is "used not only in the same statute, but in the same subsection and same sentence[,] lending support to construction in favor of harmonizing the plain meaning of the statute." Petitioner's Brief at 6. Indeed, the Supreme Court has recognized that it is a "normal rule of statutory construction . . . that identical words used in different parts of the same act are intended to have the same meaning." *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860 (1986) (internal quotation marks omitted). Therefore, when Congress uses a term in a statute, there is a presumption that Congress intended the term to have the same meaning in each of the sections or subsections within the act. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995) (concluding that the term "prospectus" had the same meaning under two different sections of the Securities Act of 1933).

---

[4]In addition to the authorities cited above, the Sixth Circuit has, in unpublished opinions by different panels, reached the same result as the majority of courts. One panel of the Sixth Circuit Court of Appeals, in an unpublished opinion, agrees with the rationale of the majority. *See Brown v. Hemingway*, No. 02-1948, 2002 WL 31845147 (6th Cir. Dec. 16, 2002) (unpublished op.) (statute is ambiguous and BOP's interpretation of statute is reasonable). Earlier, another panel of the Sixth Circuit determined that the statutory language is clear but that it mandates award of good conduct credits based on time served, consistent with the BOP regulation. *See Williams v. Lamanna*, No. 01-3198, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (unpublished op.) (statute clearly mandates award of good conduct credit based on time served) (unpublished op.).

In this case, however, the presumption is rebutted because other subsections of the statute would not make sense if the phrase "term of imprisonment" always meant "sentence imposed." An example is the use of the phrase in the following subsection:

> Upon the release of a prisoner on the expiration of the prisoner's *term of imprisonment*, the Bureau of Prisons shall furnish the prisoner with – [clothing, money and transportation].

18 U.S.C. § 3624(d). Here, the phrase "term of imprisonment" cannot mean "sentence imposed" because prisoners who earn good conduct credits would be released before the sentence imposed upon them by judgment would have expired. Such an interpretation would deprive prisoners who earn good conduct credits of the benefits listed in subsection (d), a result that would make no sense. In subsection (d), then, "term of imprisonment" does not mean "sentence imposed."

Petitioner also contends that the legislative history of a crime bill supports his interpretation of the statute. It does not. Petitioner cites comments made by Senator Biden to the Senate in 1995 when Congress was considering amendments to President Clinton's crime bill. According to Petitioner, the following comments by Senator Biden support his argument that Congress intended a model prisoner to serve only 85% of his imposed sentence:

> In the Federal courts, if a judge says you are going to go to prison for 10 years, you know you are going to prison for at least 85 percent of that time – 8.5 years, which is what the law mandates. You can get up to 1.5 years in good time credits but that is all. And we abolished parole.

Petitioner's Brief at 8 (*quoting* 141 Cong. Rec. S2348-01, Feb. 9, 1995).[5] It is clear from the context of Senator Biden's remarks, however, that he was comparing the percentage of federal sentences actually served to the typically much smaller percentage of state sentences actually served:

> But in the States, the average amount of time people serve once sentenced in the State court is 43 percent of the time. So on average, in the States . . . if they get sentenced to 10 years in the State court, they only serve 4 years 2 months in a State prison.
>
> So we fixed it at the Federal level. This was to help begin to not send rules or regulations or mandates to the States, but to send them money to fix the problems. It was to help them fix the problems I have stated, which everyone agreed on: Lack of police, lack of serious response to rape, et cetera.
>
> Now, in its breadth, the crime bill we passed reflects the lessons learned over the past decade as we studied crime and law enforcement and worked on passing this law; namely, that all of the shortcomings have to be addressed at one time. Correcting one without the other is futile because crime knows no easy single answer. What we found out in the states and what we found out in our earlier experience in the Federal Government is when you increase penalties and you do not increase the number of prison spaces, you do not do much. If you put more cops on the street, they make more arrests, you increase the penalties, and you do not have places to put the felons, then the people just walk. So now you have convicted felons who are out on the street, not having served their time.

141 Cong. Rec. S2348-01, S2349.

Senator Biden's remarks were actually made in support of providing federal funds to the states so that states could increase the number of prisons and require prisoners to serve longer sentences. Senator Biden's remarks obviously have nothing to do with how the BOP

---

[5]Petitioner's citation of the Congressional Record incorrectly cites the year as 1996.

should compute good conduct credits on an individual basis. The legislative history cited by Petitioner does not aid in the construction of § 3624(b).

Viewed in its particular statutory context, the phrase "term of imprisonment," as used in 18 U.S.C. § 3624(b)(1) to describe how credits are computed, is ambiguous. The next step of the *Chevron* analysis is to determine whether the regulation promulgated by the BOP is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Germane to this inquiry is whether Congress expressly or implicitly delegated authority to the BOP "to elucidate a specific provision of the statute by regulation." *Id.* at 843-844. Here, the BOP is charged with the duty of awarding good time credits, with credits for the last year or portion of a year being "prorated and credited within the last six weeks of the sentence." 18 U.S.C. § 3624(b)(1). Therefore, the BOP is implicitly granted the authority to determine how the proration of credits should be calculated. *See Pacheco-Camacho*, 272 F.3d at 1270.

When an agency such as the BOP is implicitly granted the authority to elucidate a specific provision of a statute by regulation, a court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron*, 467 U.S. at 844. In this case, the BOP's interpretation of § 3624(b)(1) is based on a reasonable construction of an ambiguous statute. The agency's regulation reasonably takes into account the statutory directive that up to fifty-four days of credit be awarded "toward the service of the prisoner's sentence, beyond the time served," as well as the statutory provisions requiring that good conduct time be determined retrospectively and in a prorated fashion for the last year or portion of a year of imprisonment. Furthermore, the

BOP's interpretation avoids the anomaly of awarding "good conduct" credits for time not actually served in prison.

Petitioner contends that even if the meaning of the statute is ambiguous, the "rule of lenity" should be applied. Petitioner's Brief at 9-14. According to Petitioner, application of the "rule of lenity" would require the BOP to compute good conduct credits based on the sentence imposed.

The rule of lenity provides that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant." *United States v. Bass*, 404 U.S. 336, 348 (1971). The rule "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1980). "The rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Reno v. Koray*, 515 U.S. 50, 65 (1995) (citations and internal quotation marks omitted). The rule of lenity, however, does not foreclose deference to an administrative agency's reasonable interpretation of a statute. *See Babbitt v. Sweet Home Chapter of Communities*, 515 U.S. 687, 704 n. 18 (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.").

Because the BOP's regulation requiring that good conduct time be computed based on "time served" is a reasonable construction of § 3624(b)(1), application of the rule of lenity is unnecessary and inappropriate.

11

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be dismissed upon filing.

## NOTICE OF RIGHT TO OBJECT

Petitioner is advised of his right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by July  21st , 2005. *See* LCvR72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral [Doc. #6] by the District Judge in this matter.

ENTERED this  1st  day of July, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE